## In re BEAVER COAL CO.

(District Court, D. Oregon. February 28, 1901.)

BANKRUPTCY—PREFERENCES—EXPENSES OF SHERIFF IN ATTACHMENT.

Hill's Ann. Laws Or. § 3173, provides that assignments for creditors shall discharge all attachments in which judgment shall not have been rendered at the date of the assignment, and that the claims shall share pro rata with other claims, after payment of costs and disbursements in the attachment proceedings. Bankr. Act, § 64b, subd. 5, provides that

debts entitled to priority under the laws of the states or the United States shall have priority of payment out of the bankrupt's estate. *Held,* that the claim of the sheriff or expenses incurred in the attachment were not entitled to priority of payment, as the attachment ceased to operate on the rendition of the judgment in the attachment suit, and the lien of the judgment became substituted for that of the attachment, which judgment is made null and void by the bankruptcy act, and the preference given by the state statute applied only to assignments for benefit of creditors, and furthermore, the bankrupt act, while providing for the payment of taxable costs incurred in good faith, does not include such costs in any class given priority of payment.

Bauer & Greene, for claimant.
Cotton, Teal & Minor, for trustee.

BELLINGER, District Judge. This is an application in behalf of the sheriff of Coos county for an allowance of a claim of $769.99, and for payment as a priority out of the bankrupt's estate. On the 21st of June, 1900, upon a petition in involuntary bankruptcy filed on that day, the Beaver Coal Company was adjudged a bankrupt. Prior to this, and on the 15th and 16th of December, 1899, and on February 7, 1900, writs of attachment were placed in the sheriff's hands for service in three actions against the coal company, on demands aggregating above $6,000. Under these writs the property of the company, consisting of two stocks of general merchandise, 1,200 tons of coal, some 562,000 feet of lumber, sundry cases of liquor and bar fixtures, boxes of apples, an engine and wire cable, and sundry props, timber, and lumber at the coal mine of the company, and an electric dynamo, etc., was attached. On May 14th and 19th judgments were rendered for the plaintiffs in these writs, which included the costs of the attachments and an order for the sale of the attached property. Executions were issued on these judgments, and the attached property was ordered sold thereunder. The costs and expenses of the attachment proceedings, consisting mainly of keeper's fees, amounted to $976.29, of which $206.30 accrued subsequent to the filing of the petition in bankruptcy, and is admitted to be entitled to priority in payment. Priority is claimed for the residue of these costs, amounting to $769.99, on the following grounds:

"First, because, under the laws of the state of Oregon, the claim would be and is a preferred claim and entitled to a priority, and this priority is recognized and affirmed by section 64b, subd. 5, of the bankrupt law; second, because, in equity and good conscience, the claim ought to be so allowed and paid; and, third, because the levies under the writs of attachment were made and the liens attached to the property more than four months prior to the filing of the petition in bankruptcy against the Beaver Coal Company, and orders for the sale of the attached property for the satisfaction of said costs and the claims of the attaching creditors were entered in the judgment rendered against said Beaver Coal Company before the institution of said bankruptcy proceedings, and are unaffected thereby."

By subdivision 5 of section 64b of the bankrupt act, "debts owing to any person who by the laws of the states or the United States is entitled to priority" have priority of payment out of the bankrupt's estate. Under the state assignment law (section 3173, Hill's Comp.), an assignment operates to discharge all attachments on which judgments shall not have been rendered at the date of the assignment;

and it is provided that the claims in the attachment shall share pro rata with other claims, after the payment of the costs and disbursements in the attachment proceedings. So that under the statute these costs and disbursements are given priority where there has been a general assignment for the benefit of creditors, and it is contended from this that they have priority under subdivision 5 of section 64 of the bankrupt act, above referred to. But this involves a substitution of the order of payment provided for in the state assignment law for that of the bankrupt act. The costs and expenses incident to an attachment are not debts entitled to priority under the state laws. The priority which such claims have is limited to the distribution of insolvent estates under the general state assignment act. Otherwise than this, there is no law of the state that gives priority to such claims. In Re Hamann, 3 Nat. Bankr. N. 205, the fees of a sheriff in levying an execution were allowed as a claim against the bankrupt's estate entitled to priority of payment under section 64b, subd. 5, of the bankrupt act. The Iowa statute under which the claim is held to have priority provides that the sheriff's "fee bill may issue with like force and effect of a judgment, first against the defendant, and failing there, on motion made, may execute against the plaintiff." This case, among others, is cited in support of the claim of preference made in this case. The preference under the Iowa statute is given to the sheriff, who may execute his fee bill against the plaintiff if he has failed to enforce it against the defendant. Under the Oregon statute the officer has no right in the suit or action in respect to fees. He may collect his fees in advance from the party requiring his services, or compel the party to give his undertaking to secure such payment; and when thus secured the fees may be collected by an execution against the party giving the undertaking and his sureties, issued in the name of the clerk of the court as plaintiff in the writ. The party who pays or secures the fees of the officer, if he prevails, is entitled to recover them as a part of his judgment. And so in the present case the plaintiff in the attachment included the fees in question in the judgment recovered by him. The attachments ceased to operate upon the rendition of the judgments in the attachment suits. The lien of the judgments became substituted for that of the attachments, and these judgments are made null and void by the act of congress. It does not admit of argument, from a provision of the law recognizing priorities created by the state law, that congress intended a claim like this to have priority in the face of an explicit provision against it. There is no question of equity and good conscience in the case. The act of congress prescribes the order in which claims against a bankrupt's estate must be paid; and while it provides that a claim like this for taxable costs incurred in good faith by a creditor, before the filing of the petition, in an action to recover a provable debt, may be proved and allowed against the bankrupt's estate, it nowhere includes such a claim in any class given priority of payment, and such a claim is not entitled to priority. In re Allen (D. C.) 96 Fed. 512; In re Young, Id. 606.

It is contended that the services for which these fees are charged were rendered in preserving the estate; but the referee finds to the

contrary, and the circumstances of the levy and the character of the property levied on tend to show that the only office performed by the writs and the custody of the sheriff was that of giving a preference for the plaintiffs in the writs. Section 64 of the bankruptcy law gives preference to a claim for actual and necessary costs of preserving the estate subsequent to filing the petition in bankruptcy. If this was a case where the claim was for an expenditure that the trustee would have been compelled to make himself, I should not hesitate to give it priority. An expenditure saved to the estate deserves to be treated as made for the estate; but this is not such a case. The claimants levied their attachments, as they had a right to do, and they did so in good faith; but this is as far as their equities go. The act does not allow a preference on such grounds, and there is no good reason why the expense of an attachment levied to secure a debt should have preference over a debt arising out of the payment of money or the transfer of property to the bankrupt, made also in good faith, and which may represent or constitute property of the bankrupt levied upon under the attachment. The application for payment of the sheriff's claim as a priority of the bankrupt's estate is denied.