## In re THE COPPER KING, Limited.

(District Court, N. D. California. February 5, 1906.)

### No. 4,215.

1. BANKRUPTCY—DEBTS ENTITLED TO PRIORITY—COSTS OF ATTACHMENT SUIT.

The insolvency act of California of March 26, 1895 (St. 1895, p. 153, c. 143, § 69), which makes the costs incurred in an attachment suit a preferred claim if the claim upon which such suit was commenced is proved against the estate of the debtor in insolvency proceedings, is in conflict with Bankr. Act July 1, 1898, c. 541, § 67f, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], which makes the lien of the attachment void if obtained within four months prior to the bankruptcy of the debtor, and is therefore suspended by that act, and cannot be invoked to entitle the attaching creditor to priority as to such costs, under section 64b, subd. 5 (30 Stat. 563 [U. S. Comp. St. 1901, p. 3447]), as a debt entitled to priority by the laws of the state.

2. SAME.

A claim for taxable costs incurred in good faith by a creditor of a bankrupt in an attachment suit to recover a provable debt, which attachment was rendered void by the subsequent bankruptcy proceedings, is not a debt owing by the bankrupt, within the meaning of Bankr. Act July 1, 1898, c. 541, § 64b, subd. 5, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], and entitled to priority thereunder as one given priority by St. Cal. 1895, p. 153, c. 143, § 69, conceding such provision to be in force and applicable, since, while it makes such costs a preferred claim against the estate of the debtor in insolvency, it does not make the insolvent personally liable therefor.

In Bankruptcy. On review of order of referee.

W. B. Kollmyer, for petitioner.
Walter D. Mansfield, for trustee.

DE HAVEN, District Judge. This is a petition by an attaching creditor for the review of an order made by the referee. It appears from the finding of the referee that the petitioner, on February 4, 1903, commenced in one of the courts of the state an action to recover from the bankrupt the sum of $10,404.96, for goods, wares, and merchandise sold, labor performed, and money advanced to the bankrupt. A writ of attachment was issued in that action and levied upon property of the bankrupt, February 5, 1903. This attachment was in force May 29, 1903, the date of the commencement of the bankruptcy proceedings herein. The referee also found that the petitioner necessarily, and in good faith, incurred and paid the sum of $1,017.20, as taxable costs, in the action referred to, and of this $133 was for the expense of keeping the property attached subsequent to the filing of the petition in bankruptcy. This last sum was allowed as a debt entitled to priority, and the remainder of the taxable costs, $884.20, was allowed as an ordinary debt not entitled to priority. The contention of the petitioner is that the whole amount of the taxable costs incurred in the action mentioned constitutes a debt entitled to priority, and that the referee erred in not so holding. The argument in support of this proposition is based upon subdivision 5 of section 64b of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], which provides that, among the

debts entitled to priority, are "(5) debts owing to any person who by the laws of the states or the United States is entitled to priority," and section 69 of the insolvency act of this state, approved March 26, 1895 (St. 1895, p. 153, c. 143), which is as follows:

"When an attachment has been made and is not dissolved before the commencement of proceedings in insolvency, or is dissolved by an undertaking given by the defendant, if the claim upon which the attachment suit was commenced is proved against the estate of the debtor, the plaintiff may prove the legal costs and disbursements of the suit, and of the keeping of the property, and the amount thereof shall be a preferred debt."

The question presented is an important one, and, in view of conflicting decisions, cannot be said to be free from doubt. The cases of In re Lewis (D. C.) 99 Fed. 935, and In re Daniels (D. C.) 110 Fed. 745, fully sustain the position of the petitioner, while a different conclusion was reached in Re Beaver Coal Co. (D. C.) 107 Fed. 98, and by this court in the case of In re Allen (D. C.) 96 Fed. 512, and to this latter opinion, I still adhere. The section of the insolvency act of the state of California, above quoted, makes the costs incurred in an attachment suit a preferred claim, if the claim "upon which the attachment suit was commenced is proved against the estate of the debtor," although such action may have been commenced for the purpose of obtaining a preference, and the court is not justified in construing it otherwise for the purpose of bringing it into harmony with the provisions of the bankruptcy act, which will not in such a case even permit the claim for taxable costs to be proved as an ordinary debt. The section must stand or fall as a whole, as it is not separable; and in providing, as it does, that costs incurred in an attachment suit constitute a preferred claim, if the debt sued for "is proved against the estate of the debtor," it is in conflict with the bankruptcy act, and is therefore suspended by that act. Its language cannot be given a narrower meaning than it plainly has, so as to make it applicable only to cases in which the taxable costs may be proven in proceedings under the bankruptcy act. That the court would not be warranted in introducing into the above-quoted section of the insolvency act any words of limitation so as to remove the conflict between it and the bankruptcy act, see Baldwin v. Franks, 120 U. S. 678, 7 Sup. Ct. 656, 32 L. Ed. 766. But, independently of this consideration, I am of the opinion that a claim for taxable costs incurred in good faith by a creditor, in an action to recover a provable debt, is not a debt, within the meaning of subdivision 5 of section 64b of the bankruptcy act. A debt as defined in section 1 of that act (30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) includes "any debt, demand or claim provable in bankruptcy," unless such meaning is inconsistent with the context. This definition leaves open the question as to the meaning of the word "debts" in the particular clause under consideration; and, in my opinion, it is there used in its technical sense, and refers only to such debts as are based upon contract, express or implied, or to personal obligations for the payment of money imposed upon the bankrupt by statute. The insolvency law of California does not make the insolvent, upon the contingency therein named, personally liable for the costs incurred by his creditor, in an action in which

a writ of attachment has been issued. The liability is not personal, but is against his estate. The liability for such costs, therefore, even if considered as a debt, is not a debt "owing" by the bankrupt, and does not fall within the provisions of subdivision 5 of section 64b of the bankruptcy act. In some of the states certain classes of debts arising upon contract are entitled to priority of payment in the distribution of estates, such, for instance, as debts due from a guardian to his ward for moneys coming into his hands as such guardian; so also, the obligation of sureties upon bonds of guardians (In re Crow [D. C.] 116 Fed. 110) ; and in Massachusetts, counties are declared to be, as to certain claims, preferred creditors of an insolvent, and entitled to priority of payment from his estate (In re Worcester County, 102 Fed. 808, 42 C. C. A. 637). It was the purpose of subdivision 5, § 64b, of the bankruptcy act, to preserve the rights of creditors under such contracts; and it may extend to an indebtedness upon an implied contract which is given priority by a law of the state. But, in view of the fact that an attachment lien obtained within four months prior to the filing of the petition, which includes the lien for costs in the attachment proceeding, is dissolved by subdivisions "c" and "f" of section 67 of the bankruptcy act (30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), it is not reasonable to conclude that Congress intended by subdivision 5 of section 64b to make the claim for costs, the lien of which is thus destroyed, a preferred debt; and there is certainly much force in what was said by the late Judge Bellinger, in delivering the opinion in the case of In re Beaver Coal Co. (D. C.) 107 Fed. 98 :

"The claimants levied their attachment, as they had a right to do, and they did so in good faith; but this is as far as their equities go. The act does not allow a preference on such grounds, and there is no good reason why the expense of an attachment levied to secure a debt should have preference over a debt arising out of the payment of money or the transfer of property to the bankrupt, made also in good faith, and which may represent or constitute property of the bankrupt levied upon under the attachment."

The order of the referee is affirmed.